**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUST FUTURES LAW<br>1629 K Street NW, Suite 300<br>Washington, DC 20006<br><br>AMERICAN IMMIGRATION COUNCIL<br>PMB2026<br>2001 L Street NW, Suite 500<br>Washington, DC 20036<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES<br>20 Massachusetts Ave. NW, Room 4210<br>Washington, DC 20529<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>245 Murray Lane SW<br>Washington, DC 20528<br><br>*Defendants.* | Civil Action No. 1:26-cv-1045 |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel Defendants U.S. Citizenship and Immigration Services ("USCIS"), and its parent agency, U.S. Department of Homeland Security ("DHS"), to disclose information requested by Just Futures Law and the American Immigration Council (together referred to as "Plaintiffs") about USCIS' policies aimed at vetting applicants, based on protected speech, for immigration benefits prior to adjudicating their applications.

2. In the first day of its second term, the Trump administration issued Executive Orders 14161 directing federal agencies to "vet and screen to the maximum degree possible all

aliens who intend to be admitted, enter, or are already inside the United States" to purportedly ensure that noncitizens do not "bear hostile attitudes" toward the United States.

3.    Days later, on January 29, 2025, the Trump administration issued Executive Order 14188, which purported to direct agencies to "curb or combat antisemitism."

4.    The Orders are broadly construed. In practice, the Trump administration has improperly used the term "antisemitism" to encompass advocacy for Palestinian rights and criticism of the state of Israel for human rights violations. For example, Secretary Rubio previously stated that chants such as "free, free Palestine" are "emblem[s] of Jew hatred,"[1] exemplifying the broad range of speech that may be considered derogatory.

5.    In line with these executive orders, USCIS implemented policies to screen applicants for certain immigration benefits for purported "antisemitic" activity.

6.    On April 29, 2025, USCIS announced it would also vet immigration benefit applicants for expressing "anti-Americanism."

7.    USCIS does not define "Anti-American" or "antisemitic."

8.    Under these newly adopted measures, individuals' speech, beliefs, or associations, including their social media and online presence, can be considered negative factors in the adjudication of immigration and visa benefits.

9.    Since taking office, the Trump Administration has targeted individuals for enforcement actions for a wide range of activities, including those protected by the First Amendment.

10.    The adoption of these policies has been shrouded in secrecy. The Defendants' vague and opaque parameters and procedures for vetting immigration and visa applications create significant uncertainty and have a chilling effect on the exercise of dissent within the academic community and in broader society.

---

[1] Jerusalem Post Staff, *Rubio condemns 'Free, free, Palestine' chant as emblem of Jew-hatred*, The Jerusalem Post (May 28, 2025), https://www.jpost.com/international/article-855767.

11.     To meaningfully inform the public debate about USCIS' new vetting procedures, Plaintiffs filed a request under Freedom of Information Act ("FOIA") on December 22, 2025, for records and data about the agency's implementation of these policies.

12.     To date, Defendants have not responded to Plaintiffs' request, nor have they produced records in response to the request.

13.     Defendants' failure to disclose and produce the requested records violates the FOIA.

14.     Plaintiffs now bring this action to compel Defendants to immediately process Plaintiffs' request and produce the information to which they are entitled and which has been unlawfully withheld.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter under FOIA, 5 U.S.C. § 552(a)(4)(B), and as a federal question under 28 U.S.C. § 1331.

16.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

17.     Plaintiff Just Futures Law ("JFL") is a 501(c)(3) nonprofit organization that works with organizers and base-building groups to develop legal and advocacy strategies aimed at addressing criminalization and deportation. JFL disseminates information about the immigration system to the public in accessible ways and is a leader in providing training and support for legal practitioners, community-based organizations, and community members. JFL provides expert information and community-based education on immigration agencies' tactics, the ramifications of those tactics on free expression, and possible legal and policy remedies. JFL is established under the laws of Delaware and headquartered in Washington, D.C.

18.     Plaintiff American Immigration Council ("the Council") is a nonprofit educational and charitable organization. The Council strives to strengthen the United States by shaping immigration policies and practices through innovative programs, cutting-edge research, and

3

strategic legal and advocacy efforts grounded in evidence, compassion, justice, and fairness. It authors factsheets, special reports, and blog posts on proposed and actual immigration policies, some of which shape media coverage in outlets across the nation. It also analyzes immigration data and other government records—including those obtained through FOIA requests like the one at issue in this litigation—in interactive web reports and blog posts. The Council circulates these publications to hundreds of thousands of readers through its website, email newsletters, and social media accounts.

19.   Defendant USCIS is a component agency of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS is the subcomponent tasked with adjudicating applications for various immigration benefits requests filed by or on behalf of noncitizens. Upon information and belief, USCIS has possession and control over the requested records.

20.   Defendant DHS is a department of the executive branch of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1). It is the parent agency of USCIS. It "has a decentralized system for responding to FOIA requests" where requests for DHS records are directed to and processed by FOIA offices in USCIS and each of its other individual components. 6 C.F.R. § 5.3(a)(1). Upon information and belief, DHS also has possession and control over the requested records.

## STATEMENT OF FACTS

### I.   Background

21.   On President Trump's first day of his second term in office, he issued Executive Order 14161, declaring that the United States "must ensure that admitted aliens and aliens otherwise already present in the United States do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles..." Exec. Order 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02009.pdf. The Order instructed the DHS Secretary to identify all resources and mechanisms that can be used to vet and screen noncitizens to the maximum degree and to "evaluate and adjust all existing

regulations, policies, procedures, and provisions of the Foreign Service Manual, or guidance of any kind pertaining to each of the grounds of inadmissibility." *Id.*

22. Shortly afterwards, on January 29, 2025, President Trump issued Executive Order 14188. The Order directed the DHS Secretary to "submit a report to the President... identifying all civil and criminal authorities or actions within the jurisdiction of that agency that might be used to curb or combat anti-Semitism." Exec. Order 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02230.pdf. This included reporting on how the agency will work with universities to identify activities of noncitizen students and staff they deem to fall under the security and foreign policy related inadmissibility grounds under 8 U.S.C. § 1182(a)(3). *Id.*

23. In line with these Executive Orders, United States Citizenship and Immigration Services ("USCIS"), announced on April 9, 2025, that it would begin considering "antisemitic activity" on social media as grounds for denying immigration benefit requests, including lawful permanent resident status and foreign student status. USCIS, *DHS to Begin Screening Aliens' Social Media Activity for Antisemitism* (Apr. 9, 2025), https://www.uscis.gov/newsroom/news-releases/dhs-to-begin-screening-aliens-social-media-activity-for-antisemitism (hereinafter "Social Media Screening Announcement"). USCIS' website states that its Policy Manual contains the agency's official policies and assists immigration officers in rendering decisions. It indicates that all USCIS officers must follow the Policy Manual in the performance of their duties.

24. In considering immigration benefits requests, the Policy Manual instructs that USCIS officers perform a comprehensive discretionary analysis in which they weigh all positive factors present in a particular case against any negative factors in the totality of the record.

25. On August 19, 2025, USCIS announced updates to its Policy Manual regarding the exercise of discretion in adjudicating immigration benefits. In its announcement, USCIS Spokesman Matthew Tragesser stated that "America's benefits should not be given to those who despise the country and promote anti-American ideologies," and the agency "is committed to implementing policies and procedures that root out anti-Americanism and supporting the

enforcement of rigorous screening and vetting measures to the fullest extent possible." USCIS, USCIS to Consider Anti-Americanism in Immigrant Benefit Requests (Aug. 19, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-to-consider-anti-americanism-in-immigrant-benefit-requests.

26. The Policy Manual now provides that the expression of "anti-American" and "antisemitic" views are "overwhelmingly negative factor[s]" in the discretionary analysis that will be used to deny benefits. USCIS, Policy Manual Vol. 1, Part E, ch. 8.C.2 (Identifying Discretionary Factors) (Dec. 19, 2025), https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-8#footnotelink-39.

27. The relevant section of the Policy Manual states that the agency may deny benefit requests that involve "such circumstances."

28. The new sections of the Policy Manual do not define the terms "anti-American" or "antisemitic."

29. Without clarification of these definitions, immigration officers have permission to make decisions based on their subjective discretionary authority.

30. In practice, the Trump administration and Defendants have conflated "antisemitism" with criticisms of the State of Israel for human rights violations and advocating for Palestinian rights.

31. For example, the administration targeted individuals for visa and green card revocations and deportations for activities such as organizing and participating in peaceful demonstrations[2] and publishing an op-ed critical of a university's administration.[3]

32. Further, in the case of Mr. Mahmoud Khalil, a graduate student at Columbia University who was arrested for his advocacy for Palestinian rights, Secretary Rubio submitted a letter in Mr. Khalil's removal proceedings characterizing his activities as "antisemitic" and

---

[2] Phil McCausland, *Who is Mahmoud Khalil, Palestinian student activist facing US deportation?*, BBC News (June 20, 2025), https://www.bbc.com/news/articles/cgj5nlxz44yo.
[3] Hannah Allam, *American Rendition: Rümeysa Öztürk's Journey From Ph.D. Scholar to Trump Target Languishing in Louisiana Cell*, ProPublica (Apr. 13, 2025), https://www.propublica.org/article/rumeysa-ozturk-best-friend-inside-story-tufts-trump-louisiana-ice.

"disruptive," claiming they undermined a U.S. foreign policy objective. *Mahmoud Khalil v. Donald J. Trump*, No. 25-cv-01963 (MEF)(MAH), Doc. 272 (D.N.J. May 28, 2025).

33.     News reporting indicates that the DHS created social media vetting tools to surveil noncitizen students' social media for political speech which they then share with USCIS.[4] USCIS in turn asks the Department of State to determine whether the students' visa should be revoked.[5]

34.     Given the lack of clarity around what type of expression the Administration intends to classify as anti-American or antisemitic, the Administration's policies pose a threat to freedom of expression. Indeed, a district court has already found that organizational plaintiffs in another lawsuit established plausible claims that their noncitizen members are self-censoring due to related policies. *American Association of University Professors v. Rubio*, 780 F. Supp. 3d 350, 384 (D. Mass. 2025).

## II.    Plaintiffs' FOIA Request and Defendants' Failure to Respond

35.     On December 22, 2025, Plaintiffs filed a request under FOIA requesting USCIS records and data relating to the agency's implementation of these policies.

36.     The request asked for:

> a. Records providing agency staff with instructions related to the implementation of Executive Orders 13899, 14161 and 14188 and the April 9, 2025 USCIS Social Media Screening Announcement;
>
> b. Certain de-identified data from the agency's CLAIM 3 data system about applicants for adjustment of status whose immigration benefit applications were denied based on the application of the new discretionary factor relating to "anti-Semitism" and "anti-Americanism;"
>
> c.  Certain de-identified data from the Fraud Detection and National Security Data  System (FDNS-DS) about instances where the FDNS

---

[4] Julia Ainsley, *Inside the DHS task force scouring foreign students' social media*, NBC News (Apr. 9, 2025), https://www.nbcnews.com/politics/national-security/dhs-task-force-scouring-foreign-students-social-media-rcna198532.
[5] *Id*.

conducted administrative investigations due to the agency identifying an applicant's "anti-Semitic" or "anti-American" conduct;

d. Agency communications from USCIS' Office of Policy and Strategy or the agency's Office of Chief Counsel containing certain key terms relating to the implementation of these policies;

e. Records from the Office of Policy and Strategy containing aggregate data showing the number of people who have been subject to social media vetting procedures; and

f. Legal memoranda issued by USCIS Office of Chief Counsel concerning the legal implications of denying immigration benefits based on their speech, beliefs, or associations.

A complete and true copy of Plaintiffs' FOIA request is attached and marked as *Exhibit A*.

37. Plaintiffs also requested a fee waiver of any applicable fees that the agency may assign to the request.

38. Plaintiffs filed the request via USCIS' FOIA Immigration Records System (FIRST).

39. The FIRST system generated an automatic response designating Plaintiffs' request as No. COW2025010491REQ.

40. To date, USCIS has yet to acknowledge receipt of the request or respond to it in any way.

41. USCIS has possession and control over the requested records.

42. Additionally, DHS rules, policies, and procedures govern USCIS's processing of FOIA requests. *Id.* § 5.1(a)-(c). As such, DHS also has possession, custody, and control of the records that Plaintiffs seek. *Sanchez Mora v. U.S. Customs & Border Protection*, Civil Action No. 24-3136, 2025 WL 1713252, at *5 (D.D.C. June 18, 2025) (FOIA "requests submitted to a DHS component…must also be understood as submitted to DHS, the parent agency.").

8

## CLAIMS FOR RELIEF

### COUNT I
### FOIA Violation: Failure to Conduct an Adequate Search for Responsive Records

43.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

44.    Plaintiffs properly requested records within the possession, custody, and control of Defendants.

45.    Defendants are agencies subject to FOIA and must therefore make reasonable efforts to search for requested records.

46.    Defendants have failed to promptly search agency records for the purpose of locating records responsive to Plaintiffs' FOIA requests.

47.    Defendants' failure to conduct an adequate search for responsive records violates FOIA and applicable regulations. *See* 5 U.S.C. § 552(a)(3)(C).

### COUNT II
### FOIA Violation: Failure to Respond and Wrongful Withholding of Responsive Records

48.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

49.    Plaintiffs properly requested records within the possession, custody, and control of Defendants.

50.    Defendants are agencies subject to FOIA and therefore must release any non-exempt records responsive to a FOIA request and provide a lawful reason for withholding any materials.

51.    As of the date of this filing, Defendants have not responded to or produced any records responsive to Plaintiffs' FOIA requests.

52.    Defendants are wrongfully withholding responsive agency records requested by Plaintiffs by failing to produce non-exempt responsive records to its FOIA requests.

9

53.    Defendants' failure to produce all non-exempt responsive records violates FOIA and applicable regulations. *See* 5 U.S.C. § 552(a)(3), (a)(6).

## COUNT III
### FOIA Violation: Failure to Adjudicate Plaintiffs' Request for a Fee Waiver

54.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

55.    Defendants failed to comply with the time limits established in 5 U.S.C. § 552(a)(6) and so therefore cannot assess any search fees against Plaintiffs. § 552(a)(4)(A)(viii)(I).

56.    Plaintiffs are also entitled to a full waiver of fees under FOIA because disclosure of the records sought is in the public interest. The records will contribute significantly to the public understanding of Defendant USCIS' operations, and the requests are not primarily in Plaintiffs' commercial interest. 5 U.S.C. § 552(a)(4)(A)(iii). Plaintiffs meet all the factors required by the regulations authorizing the approval of a fee waiver. *See* 6 C.F.R. § 5.11(k).

57.    Defendant USCIS' failure to grant Plaintiffs' fee waiver violates FOIA and its implementing regulations. *See* 5 U.S.C. § 552(a)(4)(A)(iii).

## REQUESTED RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court grant the following relief:

   a.   Assume jurisdiction over the matter;

   c.   Order Defendants to expeditiously conduct a reasonable search for all records responsive to Plaintiffs' FOIA request pursuant to 5 U.S.C. § 552(a)(3)(C);

   d.   Order Defendants to process and disclose responsive non-exempt records in their entirety and make them promptly available to Plaintiffs;

   e.   Review any and all of Defendants' decisions to redact or withhold information in responsive records and enjoin Defendants from improperly withholding records;

f.   Enjoin Defendants from assessing fees or costs for the processing of Plaintiffs' FOIA

Requests;

g.   Award Plaintiffs' costs and reasonable attorneys' fees in this action as provided by 5

U.S.C. § 552(a)(4)(E); and

h.   Grant other such relief as the Court may deem just and proper.


Dated: March 27, 2026

Respectfully submitted,

/s/ Sejal Zota
Shubra Ohri (to be admitted *pro hac vice)*
Sejal Zota (DC Bar. No. NC020)
Just Futures Law
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 355-6390
shubra@justfutureslaw.org
sejal@justfutureslaw.org



/s/ Raul Pinto
Raul A. Pinto (DC Bar No. 90013180)
American Immigration Council
PMB2026
2001 L Street N.W., Suite 500
Washington, DC 20036
(202) 507-7549 | rpinto@immcouncil.org


*Attorneys for Plaintiffs*