# Exhibit A

 

December 22, 2025

National Records Center, FOIA/PA Office
U.S. Citizenship and Immigration Services
P. O. Box 648010
Lee's Summit, MO 64064-8010

*RE: Freedom of Information Act Request around Online Presence and Social Media Vetting Programs*

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and its implementing regulations, 6 C.F.R. § 5.1 *et seq.*, Just Futures Law ("JFL") and the American Immigration Council ("AIC"), referenced together as Requesters, seek records from United States Citizenship and Immigration Services ("USCIS") related to the parameters, processes, and guidelines of vetting tools and programs that rely on individuals' speech, beliefs, or associations, including their social media and online presence, as negative factors in the adjudication of immigration and visa benefits.

Requesters seek a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).

## I.    Background

On his first day of his second term in office, President Trump issued Executive Order (EO) 14161, "Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats." This EO declared that the United States "must ensure that admitted aliens and aliens otherwise already present in the United States do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles, and do not advocate for, aid, or support designated foreign terrorists and other threats to our national security."[1] The EO mandated that the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to identify all resources and mechanisms that they can use to vet and screen noncitizens to the maximum degree and to "evaluate and adjust all existing regulations, policies, procedures, and provisions of the Foreign Service Manual, or guidance of any kind pertaining to each of the grounds of inadmissibility."[2] Shortly following, President

---

[1] Exec. Order 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02009.pdf.
[2] *Id.*

1

Trump issued Executive Order 14188, "Additional Measures To Combat Anti-Semitism." This EO directed the head of each executive department or agency, including the Secretary of State, the Secretary of Education, and the Secretary of Homeland Security,  to "submit a report to the President... identifying all civil and criminal authorities or actions within the jurisdiction of that agency that might be used to curb or combat anti-Semitism."[3] This includes reports on how they will work with universities to identify activities of noncitizen students and staff that they deem to be security and foreign policy related inadmissibility grounds under 8 U.S.C. § 1182(a)(3).[4]

On April 9, 2025, in line with these Executive Orders, USCIS announced that it would begin considering "anti-Semitic activity" on social media as grounds for denying immigration benefit requests, including lawful permanent resident status and immigration benefits related to student-based status.[5] However, USCIS has provided limited information to the public as to what constitutes as "anti-Semitic" activity.

Despite the official announcement noting that screening would focus on "anti-Semitic activity," in a press release on the first 100 days, USCIS claimed also to have adopted social media vetting for "anti-Americanism,"[6] greatly expanding the potential content that could act as a negative discretionary factor in immigration benefit applications. On August 19, 2025, USCIS announced that it had updated guidance on the use of discretion in the adjudication of certain immigration benefits.[7] In its press release, USCIS Spokesman Matthew Tragesser stated that "America's benefits should not be given to those who despise the country and promote anti-American ideologies."[8] He further stated that USCIS "is committed to implementing policies and procedures that root out anti-Americanism and supporting the enforcement of rigorous screening and vetting measures to the fullest extent possible."[9]

USCIS updated its Policy Manual to create a new negative discretionary factor regarding "anti-Americanism" and "anti-Semitic" expression.[10] The Policy Manual directs adjudicators to consider this factor as "overwhelmingly negative" and states that the agency will use its discretion "to deny . . . benefit request[s] involving such circumstances."[11] The update did not provide a definition of "anti-Americanism," and referred to 8 U.S.C. § 1424 for examples of

---

[3] Exec. Order 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02230.pdf.
[4] *Id.*
[5] U.S. Citizenship and Immigration Services, DHS to Begin Screening Aliens' Social Media Activity for Antisemitism (Apr. 9, 2025) (hereinafter "April 9 USCIS Social Media Screening Announcement"), https://www.uscis.gov/newsroom/news-releases/dhs-to-begin-screening-aliens-social-media-activity-for-antisemitism.
[6] USCIS, First 100 Days: USCIS Delivering on Making America Safe Again (Apr. 29, 2025), https://www.uscis.gov/newsroom/news-releases/first-100-days-uscis-delivering-on-making-america-safe-again.
[7] USCIS, USCIS to Consider Anti-Americanism in Immigrant Benefit Requests (Aug. 19, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-to-consider-anti-americanism-in-immigrant-benefit-requests; USCIS, Policy Alert: Clarifying Discretionary Factors in Certain Immigration Benefit Requests, PA-2025-16 (Aug. 19, 2025) (hereinafter "August 19 USCIS Policy Alert, PA-2025-16"), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250819-DiscretionaryFactors.pdf.
[8] USCIS to Consider Anti-Americanism in Immigrant Benefit Requests *supra* note 7.
[9] *Id.*
[10] USCIS, Policy Manual, Part E, Ch. 8 (Identifying Discretionary Factors) (Dec. 19, 2025), https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-8?r=seo.
[11] *See Id.*

2

anti-American ideologies, which includes those who are members or affiliated with the Community Party of the United States, or those who wish to overthrow the U.S. government by violence or by force. The lack of modern definition of anti-Americanism has generated uncertainty among the public regarding USCIS's social media vetting procedures.

## II.    Records Requested

We request the following records created on or after January 20, 2025, until the time the agency conducts a reasonable search, unless otherwise specified:

1. Records providing instructions, such as policies, directives, training materials, standard operating procedures, or communications such as letters, memoranda, or emails providing instructions, related to:
     a.    the April 9, 2025 USCIS Social Media Screening Announcement;
     b.    changes to the USCIS Policy Manual pertaining to anti-Semitism and anti-Americanism;
     c.    the definitions of the terms "anti-Semitism" or "anti-Americanism;" and
     d.    USCIS' implementation of E.O. 13899, E.O. 14161, and E.O. 14188;

2. De-identified data from April 1, 2025, until the agency conducts a reasonable search, with the following collected information from applicants for adjustment of status, i.e. Form I-485, contained in the case management system CLAIMS 3 detailing the following information about individuals whose immigration benefit applications were denied based on the application of the new discretionary factor relating to anti-Semitism and anti-Americanism:

     a.    country of origin;
     b.    religious affiliation;
     c.    gender;
     d.    age;
     e.    location of visa or benefit processing for any persons subjected to this vetting;
     f.    case processing information, including application status and whether the agency issued a Request for Further Evidence ("RFE") or a Notice of Intent to Deny ("NOID"); and
     g.    information regarding the basis for denying the immigration benefit application or issuing RFE and NOIDs;

3. The following de-identified data from April 1, 2025, until the agency conducts a reasonable search – from the Fraud Detection and National Security Data System (FDNS-DS) where the FDNS conducted an administrative investigation due to the agency identifying an applicant's "anti-Semitic" or "anti-American" conduct:
     a.    Date of birth;
     b.    Country of citizenship;
     c.    Place of birth;
     d.    Gender;
     e.    Immigration status;
     f.    Arrival/Departure information;

g. Immigration history;
h. Family relationships;
i. Personal background information (e.g., involvement with national security threats, criminal offenses, Communist party, torture, genocide, killing, injuring, forced sexual, contact, limiting or denying others religious beliefs, service in military or other armed, groups, work in penal or detention systems, weapons distribution, combat training;
j. Logs reflecting the history of checks conducted;
k. Uniform resource locators (URLs) or Internet protocol addresses;
l. Case processing information such as date applications were filed or received by USCIS, application/petition status, location of record, other control number when applicable, and fee receipt data;

4. Communications, such as emails, letters, memoranda, MS Teams messages from USCIS' Office of Policy and Strategy or the agency's Office of Chief Counsel containing any of the following case-insensitive words or terms, and common variations thereof:
    a. "social media vetting,"
    b. "social media monitoring,"
    c. "algorithmic social media monitoring,"
    d. "anti-American,"
    e. "anti-Semitism,"
    f. "social media analytic capabilities,"
    g. "political activism vetting," and
    h. "hostility towards the citizens, culture, government, institutions or founding principles of the United States;"

5. Records from the Office of Policy and Strategy containing aggregate data showing the number of people who have been subject to social media vetting procedures pursuant to the April 9, 2025 USCIS Social Media Screening Announcement, the changes to the USCIS Policy Manual discussed in the August 19 USCIS Policy Alert, PA-2025-16 pertaining to anti-Semitism and anti-Americanism, or related policies implementing E.O. 13899, E.O. 14161, and/or E.O. 14188;

6. Legal memoranda issued by USCIS Office of Chief Counsel concerning the legal implications of denying immigration benefits based on their speech, beliefs, or associations.

## III.    Requesters

Just Futures Law is a transformational immigration lawyering organization that provides legal support for grassroots organizations engaged in making critical interventions in the United States' deportation and detention systems and policies. JFL staff partner with organizations and activists who seek to understand the scope and range of government surveillance and criminalization. JFL staff have decades of experience in providing expert legal advice, written legal resources, and training for immigration attorneys and criminal defense attorneys on the

immigration consequences of the criminal legal system. JFL has a significant interest in the administration of government technology and surveillance tools in the area of immigration and law enforcement. JFL has already published several reports on government surveillance and use of technology.[12]

The American Immigration Council is a tax-exempt, not-for-profit education and charitable organization under Section 501(c)(3) of the Internal Revenue Code. The Council strives to strengthen the United States by shaping immigration policies and practices through innovative programs, cutting-edge research, and strategic legal and advocacy efforts grounded in evidence, compassion, justice, and fairness.

### IV.     Request for Fee Waiver

The Requesters seek a waiver of processing (search and review) fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media . . ."); 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). *See also* 6 C.F.R. § 5.11(d)(1). That provision should be "liberally construed in favor of waivers for noncommercial requestors." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

### 1.   Release of the Requested Records Is in the Public Interest

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest.

> a.   *The records requested concern government operations and activities. 6 CFR § 5.11(k)(2)(i)*

The records requested pertain directly to "operations or activities" of the federal government: specifically, how the agency uses social media vetting programs in the adjudication of immigration applications. It is essential that members of the public have a clear understanding of how these programs operate and their impact on free expression, including on university campuses.

---

[12] *See, e.g.,* Just Futures Law & Mijente, *Automating Deportation: The Artificial Intelligence Behind The Department of Homeland Security's Immigration Enforcement Regime* (June 2024), https://mijente.net/wp-content/uploads/2024/06/Automating-Deportation.pdf ("Automating Deportation Report"); Just Futures Law, *ICE's EDDIE Program: How Ice Uses Biometric Scanner Tech to Ramp Up Raids* (Nov. 2020), https://justfutureslaw.org/wp-content/uploads/2020/11/EDDIEreport-PDF-revised-final.pdf.

b.   *Disclosure of the requested records is "likely to contribute" to an understanding of government operations and activities. 6 CFR § 5.11(k)(2)(ii).*

This request is "likely to contribute" to a public understanding of government operations or activities by answering questions for the public—including students, scholars, institutions of higher learning, lawmakers, and journalists—about how the agency will apply the aforementioned screening. Since the policy's implementation on August 19, 2025, a wide variety of news outlets have highlighted the lack of transparency regarding definitions of anti-Americanism, vetting procedures when undertaking social media screening, and the impact of vetting procedures on students on campus.

The policy update does not give a specific definition for "anti-Americanism." According to a wide variety of news outlets, this lack of transparency has "immediately stoked confusion and alarm, with online forums debating what counted as 'anti-American."[13] USCIS' announcement reference 8 U.S.C. § 1424, a provision of the Immigration Nationality Act from 1952, which barred affiliations with communism or groups advocating violent overthrow.[14] But journalists point out that "the lack of a modern definition leaves applicants guessing how today's officers might apply the rule."[15] Furthermore, the lack of clear definition and standardized measures in defining these terms, as well as the use of broad phrases,[16] could "give immigration officers the power to crack down further on immigration, regardless of a genuine threat."[17] Some have highlighted that the only definition of "anti-Americanism" USCIS has provided relies on language in a section of the INA that does not mention "anti-Americanism," which has no prior precedent in immigration law.[18] Without further clarification on what constitutes these ideologies, lawmakers and journalists have pointed out that immigration officers are granted permission to make decisions based on their subjective discretionary authority.[19]

---

[13] Jessie Yeung, *US to screen for 'anti-Americanism' in immigration applications, a move critics liken to McCarthyism,* CNN, Aug. 19, 2025, https://www.cnn.com/2025/08/19/us/us-immigrants-screening-anti-american-hnk.

[14] USCIS, *supra* note 10.

[15] Alison Moodie, *USCIS Expands Screening for "Anti-Americanism" in Immigration Applications*, Boundless, (Aug. 21, 2025), https://www.boundless.com/blog/uscis-anti-americanism-policy-update.

[16] Jack Morphet, Victoria Albert and Michelle Hackman, *Trump Administration to Screen Immigrants for 'Anti-American' Views*, WSJ, Aug. 19, 2025, https://tinyurl.com/5n7e28ap.

[17] Corey Williams and Valerie Gonzalez, *Immigrants seeking lawful work and citizenship are now subject to 'anti-Americanism' screening*, AP News, (Aug. 19, 2025), https://apnews.com/article/immigration-uscis-antiamerican-7240aac0437487ddd5441c49a290db4c; Jessie Yeung, *US to screen for 'anti-Americanism' in immigration applications, a move critics liken to McCarthyism*, CNN, (Aug. 19, 2025), https://www.cnn.com/2025/08/19/us/us-immigrants-screening-anti-american-hnk; Kanishka Singh, *Trump administration to vet immigration applications for 'anti-Americanism'*, Reuters, (Aug. 20, 2025), https://www.reuters.com/legal/government/trump-administration-vet-immigration-applications-anti-americanism-2025-08-20/; Anna Betts, *US to 'root out anti-Americanism' in reviewing immigration applications*, The Guardian, (Aug. 19, 2025), https://www.theguardian.com/us-news/2025/aug/19/immigration-social-media; Anna Giaritelli, *DHS to deny immigration benefits to those with 'anti-American' views*, The Washington Examiner, Aug. 19, 2025, https://www.washingtonexaminer.com/policy/immigration/3759918/dhs-to-deny-immigration-benefits-to-those-with-anti-american-views/.

[18] CNN, *US to screen for 'anti-Americanism' in immigration applications, a move critics liken to McCarthyism*, 9 News, Aug. 21, 2025, https://www.9news.com.au/world/us-to-screen-for-anti-americanism-in-immigration-applications-a-move-critics-liken-to-mccarthyism/f1cb2687-9917-43ef-8ec0-35516a155937.

[19] Gibney, Anthony, & Flaherty, LLP, *Enhanced Vetting of Visa Applicants and Beneficiaries in the U.S. and Abroad: U.S. Consulates Direct Certain Applicants to Adjust Social Media Profiles*, JD Supra, Sept. 11, 2025,

6

In this vain, professors[20] and students[21] alike have expressed confusion with the social media guidelines, and many worry about the impact of these policies on their academic activities. When asked what types of views and activities could be found to be "anti-American," Joseph Edlow, Director of USCIS, said the "large-scale espousing of foreign terrorist ideology" on college campuses.[22] Universities that publish notices for policy changes affecting international students have noted that USCIS has failed to provide specificities on their plan to implement social media vetting for these applications -- but seek to update students when there are further announcements.[23]

Disclosure of the information requested will directly respond to these questions and concerns.

> c. *Disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons. 6 CFR § 5.11(k)(2)(iii)*

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject." Both Requesters have experience disseminating information to wide audiences.

JFL plans to publish responsive records and their analysis through reports, press releases, online posts, newsletters or other media to raise public awareness of the agency's use of social media vetting programs in the adjudication of immigration or visa applications. Moreover, JFL will use the records to inform rights presentations and training for the public and attorneys. Using records produced from prior FOIA requests, JFL has previously published reports, fact sheets, and community resources on federal and local government agency use of data collection, sharing, and analysis, which has reached a broad audience and garnered significant public attention.[24]

---

https://www.jdsupra.com/legalnews/enhanced-vetting-of-visa-applicants-and-2929979/.

[20] Evelyn Douek, *Can I Teach the First Amendment If I Only Have a Green Card?*, The Atlantic, Apr. 2, 2025, https://www.theatlantic.com/ideas/archive/2025/04/free-speech-deportation-crackdown/682258/.

[21] Jaeha Jang, *Student visa applicants urged to review social media posts, make accounts public*, Yale News, June 20, 2025, https://yaledailynews.com/blog/2025/06/20/student-visa-applicants-urged-to-review-social-media-posts-make-accounts-public/.

[22] Camilo Montoya-Galvez, *U.S. probing immigration applicants' social media to identify "anti-American" activity that's "beyond the pale," official says,* CBS, Oct. 16, 2025, https://www.cbsnews.com/news/immigration-social-media-anti-american-uscis-joseph-edlow/.

[23] *See, e.g.* University of Washington, Government Update, USCIS Expands Discretionary Factors in Benefit Requests (Sept. 2, 2025), https://iss.washington.edu/uscis-expands-factors-in-benefit-requests/.

[24] *See, e.g.*, Cyberscoop, *How a Private Company Helps ICE Track Migrants' Every Move*, Sept. 26, 2023, https://cyberscoop.com/ice-bi-smartlink/ (referencing JFL & Mijente factsheet on FOIA records relating to the electronic monitoring of immigrants); NationAction, *Take Action Now: Fight for Immigrant Justice*, Nation, May 18, 2020, https://www.thenation.com/article/activism/take-action-now-fight-forimmigrant-justice (referencing the JFL advisory "Surveillance During COVID-19 to learn how governments and companies arousing the health crisis to expand surveillance"); Frank Bajak, *Report: Mobile Fingerprinting a Core Tool in US Deportations*, Associated Press, Nov. 23, 2020, https://apnews.com/article/donald-trump-freedom-of-information-freedom-of-information-act-lawsuitsimmigration-0fac264dc20da65c3e5924174f9db5aa (referencing the Mijente & JFL report "Meet EDDIE: Biometric Tech Used against Immigrant Communities"); Just Futures Law, *FACTSHEET: Whitehouse Office of Science & Technology Policy Tech Surveillance Response to COVID-19* (July 2021), https://justfutureslaw.org/wp-content/uploads/2020/07/OSTP.2020-07-28.FACTSHEET.pdf; Mijente, *Who's Behind ICE? The Tech and Data Companies Fueling Deportations* (2018), https://mijente.net/wpcontent/uploads/2018/10/WHO%E2%80%99S-

Furthermore, Requester the American Immigration Council gathers data, records, and other information about immigration topics of interest to the public from FOIA and other sources, and analyzes them in blog posts, factsheets, reports, and interactive tools. These tactics support the Council's mission: to educate the public on the important and enduring contributions immigrants make to America; and challenge the myths and misinformation that too often dominate the political and public debate around immigration. Through research and analysis, the Council promotes the development of fair and rational immigration policies that reflect fundamental American values. Between January 1 and September 25, 2025, the Council's website received 4.6 million visitors; many Council publications have received tens—if not hundreds—of thousands of views within the past year; and several publications have reached the public at large by shaping immigration coverage in newspapers, television shows, and other traditional media outlets.

    d.   *The request's contribution to public understanding of government operations or activities will be "significant." 6 CFR § 5.11(k)(2)(iv)*

Disclosure will contribute "significantly" to the public understanding of the agency's use of social media vetting in the adjudication of immigration or visa applications. The requested records will meaningfully inform the public debate over USCIS's use of online presence to determine foreign students' inadmissibility or removability and its impact on free expression, including on university campuses. The disclosure of requested records will also provide the public and lawmakers insight into USCIS social media vetting and its impact on free expression.

The Trump Administration has targeted individuals for a wide-range of First Amendment-protected activities since taking office including targeting individuals for visa and purported green card revocations; and attempting to deport permanent residents for activities such as organizing, participating in peaceful demonstrations,[25] or publishing op-eds critical of universities' administration.[26] Additionally, Secretary of State Marco Rubio submitted a letter in the removal proceedings of Mahmoud Khalil, a graduate student at Columbia University, indicating that merely condoning "anti-Semitic conduct" and "disruptive protests" in the United States would be considered as severely undermining U.S. foreign policy objectives.[27] Secretary Rubio also previously stated that chants such as "free, free Palestine" are "emblem[s] of Jew hatred,"[28] exemplifying the broad range of social media posts or speech that may be considered as derogatory in the implementation of the above-mentioned vetting programs.

---

BEHIND-ICE_-The-Tech-and-Data-Companies-FuelingDeportations_v3-.pdf; https://mediajustice.org/resource/no-more-shackles-report/.

[25] Phil McCausland, *Who is Mahmoud Khalil, Palestinian student activist facing US deportation?*, BBC News, June 20, 2025, https://www.bbc.com/news/articles/cgj5nlxz44yo.

[26] Hannah Allam, *American Rendition: Rümeysa Öztürk's Journey From Ph.D. Scholar to Trump Target Languishing in Louisiana Cell*, ProPublica, Apr. 13, 2025, https://www.propublica.org/article/rumeysa-ozturk-best-friend-inside-story-tufts-trump-louisiana-ice.

[27] *Mahmoud Khalil v. Donald J. Trump*, No. 25-cv-01963 (MEF)(MAH), Doc. 198-1 (D.N.J. June 20, 2025).

[28] Jerusalem Post Staff, *Rubio condemns 'Free, free, Palestine' chant as emblem of Jew-hatred*, The Jerusalem Post, May 28, 2025, https://www.jpost.com/international/article-855767.

The vague parameters and processes for social media vetting laid out by these agencies create much uncertainty among American universities, noncitizen students and scholars, and potentially other noncitizens seeking admission or already present in the United States.

### 2.  Disclosure of the Information Requested Is Not in Requesters' Commercial Interest.

Disclosure of the information requested is not in the commercial interest of Requesters. 6 C.F.R. § 5.11(b). Requesters are nonprofit organizations that intend to disseminate the information gathered by this request to the public at no cost, including through the Requesters' websites and social media.

In prior FOIA requests, Requesters have received fee waivers:

JFL has received fee waivers by government agencies including the following FOIA Requests to USCIS: COW2024005573, COW2024005574, COW2024005575, COW2024005576, and COW2024005577, as well as requests to DHS and DHS components: 2024-HQFO-02662, CBP-2020-060295, CBP-2021-008288, and ICE-2022-ICFO-13889.

   a.  *The Requesters have no commercial interest in the disclosure. 6 CFR § 5.11(k)(1)(ii), (k)(3).*

Requesters satisfy the lack of commercial interest element because they are tax-exempt, nonprofit educational, charitable, and/or legal services organizations. As nonprofit organizations, which by definition have no commercial interest, Requesters would usually qualify for a fee waiver. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021).

Rather than furthering any commercial interest, the requested information is sought for the purpose of fulfilling Requesters' missions. Congress intended the FOIA fee waiver provision to encourage "open and accountable government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 271 (D.D.C. 2009). Therefore, agencies should "apply the public-interest waiver liberally." *Conklin v. United States*, 654 F. Supp. 1104, 1005 (D. Colo. 1987).

For example, the Council's mission is to promote the development of fair and rational immigration policies that reflect fundamental American values and uses transparency and analysis as key strategies to achieve this goal. Likewise, one of JF's missions is to track surveillance in the immigration system, and these new screenings do just that. Thus, the records requested are crucial to Requesters' goals.

   b.  *The public interest in the disclosure outweighs any identified commercial interest Requesters may have in the records sought.*

Assuming *arguendo* that the agency identifies a commercial interest, such interest is small in comparison to the public interest in disclosure. In other words, the public interest in disclosing these new screening procedures far outweighs any commercial interest the agency may ascribe to Requesters. Disclosure of these records is the only way in which the public can assess whether

USCIS has adopted standards that are contrary to the law and whether discretion is being applied correctly. Requesters, as organizations that regularly obtain FOIA re4cords to educate the public, are well positioned to receive and analyze disclosures.

For these reasons, this request for a full fee waiver should be granted. Alternatively, if the full fee waiver is not granted, Requesters seek all applicable reductions in fees. Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $25.00, please notify Requesters to obtain consent and provide an estimate of the additional fees.

### V.    Conclusion

Thank you for your consideration of this request. We look forward to your reply to this request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We request that the records be made available electronically, by e-mail attachment.

For any questions regarding this request, please contact Raul Pinto at rpinto@immcouncil.org. Thank you for your consideration.

Sincerely,


Daniel Werner
Senior Staff Attorney
Just Futures Law
1629 K St. N.W. Suite 300
Washington D.C. 20006-1631
(617) 812-2822

Raul A. Pinto
Deputy Legal Director, Transparency
American Immigration Council
PMB2026
2001 L Street N.W., Suite 500
Washington, D.C. 20036
(202) 507-7549